Alsup *v.* Clarke.

O. M. ALSUP, Adm'r, *v.* MARGARET E. CLARKE, *et al.*

WILL. *Construction.* A testator, by his will, charged the property given to his children with a "comfortable support" for his two widowed sisters, (who had been living with their children on one of the testator's plantations and been supported by him), "equal to what they now have," so long as they shall live unmarried, "or shall have need of this aid." *Held*, that the will created a trust in favor of the sisters for a fixed support in board, lodging and clothing, such as they were receiving from the testator at the date of the will, without reference to the performance of services by them, such as they had been in the habit of rendering during their brother's life, until they married, or until there was such a change in their pecuniary condition as to render the aid unnecessary. *Held*, also, that a discretionary power, conferred upon the executor by an independent item of the will, to see to the support of the sisters, and "fix the amount thereof in his discretion," which was never exercised, would not affect the trust.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. W. W. McDOWELL, Ch.

METCALF & WALKER and W. P. WILSON for complainant.

HARRIS & TURLEY for defendants.

COOPER, J., delivered the opinion of the court.

The question raised by this record is, whether the defendants, Margaret E. Clarke and Jane B. Hill, are entitled to any, and what provision under the will of their brother, J. S. Houck, who died in 1879. The

first two items of the will direct the payment of debts, and make provision for the testator's widow. Then follows:

"Item 3. All the rest and residue of my estate, real and personal, of every kind and wherever situated, I give, devise and bequeath to my children, living at the time of my death, or born thereafter, to be divided equally among them, absolutely and in fee. But this provision in behalf of my children is subject to the following charge: I have two widowed sisters, now living in Tunica county, Mississippi, viz: Mrs. Margaret E. Clarke and Mrs. Jane B. Hill. It is my will that so long as my said sisters, or either of them, shall live, or shall have need of this aid, they and the survivor of them, shall receive a comfortable support out of my estate, equal to what they now have; and the interests of my children taken under this will, whether in the hands of my executor, or of the guardian of the children, are to contribute equally to furnish this support, and being charged thus, this provision for my said sisters is not to interfere with or delay the settlement of the estate by the executor, and the turning over the interests of the children to their guardian."

The fourth item of the will recites the fact that the testator has large interests with Thomas B. Turner in plantations in Tunica county, Mississippi, planting operations therein, stock, crops, etc., money loaned, etc., and then gives Turner, as survivor and as executor, full and discretionary power to wind up their joint concerns. By the fifth item Turner is appointed ex-

ecutor of the will, and testamentary guardian of the testator's children, without being required to give security in either capacity. The sixth item confers upon Turner unlimited power in the management of the estate, and the sale and re-investment of property. It contains also this clause: "Both as executor and guardian, the said Turner is to see to the support provided for my two sisters, and fix the amount thereof in his discretion; and amounts paid out therefor shall be good vouchers in his accounts upon his own statement thereof, without receipts or vouchers."

The seventh item gives to Turner full power to manage the estate of the children, to sell their property and make investments, and to regulate their expenditures. The last two items of the will are as follows:

"Item 8. It is my express will and intention that the large powers and discretion hereby given to said Turner as executor and guardian, shall be considered as a matter of personal confidence and trust, and as such limited and confined to him, and not in any way to pass to, or vest in any other person who may become my personal representative or guardian of my children. As to any other person, who may occupy these positions, it is my will that the law, strictly administered, shall be the measure of power, with all the safeguards of bond and security, and all the limitations upon private action and judgment which the law prescribes and provides.

Item 9. It is my will, and I do hereby expressly provide, that the provision made for my two sisters

in item three of this will is to have effect only so-
long as they shall continue unmarried; and upon the
marriage of either of them, the provision will at once
cease as to her."

The will was probated, and Turner qualified as ex-
ecutor and guardian in November, 1879. He died
April 16, 1883, having been confined to his house for
twelve months before his death, and unable during that
period to give active attention to business. The com-
plainant, Alsup, was appointed administrator *de bonis
non,* with the will annexed, of the testator's estate after
the death of the executor, and filed the present bill
for the construction of the will. The estate owed no-
debts of any consequence, and Turner, as executor and
guardian, received about $118,000 of personal assets,
about $90,000 of which in value, were income-pro-
ducing stocks and bonds. The testator also died
seized of real estate in Tennessee and Mississippi of
considerable value. The testator left a widow, who
only survived him a few hours, and four children, all
of whom were under age at the filing of the bill.

Mrs. Clarke, one of the testator's sisters, was about
sixty years of age when the depositions were taken
in this cause, in feeble health, having only one child,.
a son, of age. Mrs. Hill, the other sister, was about
fifty years of age, with four children, the oldest of
age. These women had been living for several years
before the testator's death, with their children, on a
plantation in Tunica county, Mississippi, owned by the
testator and Turner, and had been furnished with sup-
plies from Memphis. They were dressed comfortably,

and had an abundant table. But they did all the house work themselves, such as cooking, washing, milking, etc. After the testator's death they continued to reside on the place as before, the plantation for the year following the death of the testator being run by Turner, the son of Mrs. Clarke, and the oldest son of Mrs. Hill. Turner then sold the plantation to his associates on time for $20,000, of which they have paid $2,000, and the unpaid balance of purchase money is largely more than the property is worth. Neither of the mothers or their children had any property or means, nor have the women ever acquired any. Turner paid them nothing under the testator's will.

By the third item of his will, as modified by the ninth item, the testator charges the real and personal property given to his children with "a comfortable support" for his sisters, "equal to what they now have," so long as they, or either of them, "shall live unmarried, or shall have need of this aid." The charge and bequest are plain and positive, as much so as any provision of the will, not subject to the discretion of any person so far as these items are concerned. And the amount of the charge is fixed with reasonable certainty, for a comfortable support, equal to what they had at the date of his will, February 3, 1875, was susceptible of easy ascertainment. The only point of doubt would be as to the meaning of the words "or shall have need of this aid." Was it the intention of the testator, as now contended for on behalf of his children, to limit the bounty given his sisters, to such a part of the "comfortable support" mentioned as

might remain after deducting the wages they, the sisters, might earn for work similar to that performed by them on his place? Or was the intention to furnish them a fixed support, such as they had been in the habit of receiving from him, until the pecuniary condition of the sisters should be so changed as no longer to require the aid? In the one view, the only bounty would be the mere deficit over wages earned, and the legatees would be required, like a dismissed servant, to seek for employment in order to lessen the charge on their brother's estate. There would be no gift, whatever, if any person, even their own sons, were willing to furnish them board, lodging and clothing for such services as they could render. We do not think the testator intended that his bounty, limited as it is, should be measured in this way by a one-ounce vial. He intended to give them a comfortable support for life, measured by their previous habit and condition, without reference to their capacity for work, and whether they worked or not, if their own pecuniary condition continued to require it. And certainly there is nothing in the proof to show any change in this respect. If not supported by the bounty of the testator, they must be supported by the bounty of others, or their own labor. The bequests are not made to depend on either of these contingencies, and were intended to give "a comfortable support" out of the estate, that is board, lodging and clothing, such as they were having at the date of the will, said support to date from his death.

But, it is argued on behalf of the children, the

Alsup *v.* Clarke.

amount of the bounty is left, by the sixth item of the will, to the unlimited discretion of Turner, and as he paid the sisters nothing in his life time he must have exercised his discretion against them, and as he is now dead the discretion has gone with him. But the power conferred by the sixth item of the will is entirely distinct from the trust or charge created by the third item. The gift continues, even if the power be not exercised. A clear distinction exists, says Judge Wright, between a power, and the estate and trusts, the subject matter of the power. While the power may be gone, or be incapable of transmission, the trusts may still remain and be executed: *Belote* v. *White*, 2 Head, 703. The intention of item sixth was to confer a personal power upon the executor, under which the bounty might have been increased, and not to interfere with the positive bounty of the third item, for he is expressly required "to see to the support provided" thereby. And even if the two items are to be read together, there would be a power coupled with a trust, and the trust would be executed although the power has not been exercised: *Robertson* v. *Gaines,* 2 Hum., 367, 378; *Cruse* v. *McKee,* 2 Head, 1. And the courts will act retrospectively in executing these powers as *quasi* trusts: *Maberley* v. *Turton,* 14 Ves., 499; *Edwards* v. *Grove,* 4 De G. F. & J., 222.

The chancellor came to the same conclusion, except that he dates the bequests from the death of the executor, and, upon a reference, fixed the support at thirty dollars a month for each sister, which is well warranted by the proof.

---

The decree below will therefore be affirmed with the modification above stated, and the cause remanded for the execution of the decree, and such further orders as may hereafter be required. The complainant will pay the costs of the cause out of the assets of the estate.